UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| YVONNE NKRUMAH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Case No. 20-1892 (RJL) |
| | ) | |
| MICHAEL R. POMPEO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION

October **26**, 2020 [Dkt. #13]

Plaintiff Yvonne Nkrumah—a Ghanaian citizen who works for the World Bank in Washington, D.C.—challenges the U.S. Department of State's determination that her presence in the United States is not desirable, which may ultimately result in the revocation of her G-4 visa. She claims that this "undesirability" determination was made without following applicable procedures for the revocation of visas. Because plaintiff was informed with approximately two weeks' notice that she must depart the United States by July 15, 2020 (later extended until September 25, 2020), plaintiff moved for a temporary restraining order and then a preliminary injunction barring the U.S. Department of State from revoking her visa until applicable procedures were followed. Before this Court is plaintiff's Motion for a Preliminary Injunction [Dkt. #13]. Upon consideration of the parties' briefing and argument, the relevant law, and the entire record, and for the reasons stated below and in the Court's September 23, 2020 hearing, plaintiff's motion for a preliminary injunction is DENIED.

## BACKGROUND

Plaintiff Yvonne Nkrumah is a Ghanaian citizen who works for the World Bank in Washington, D.C.  *See* Compl. ¶ 1 [Dkt. #1].  She is a Senior Operations Officer who deals with issues related to international access to medicines.  *Id.* ¶ 1; Pl.'s Mem. in Supp. of Mot. for Prelim. Inj., Ex. B, Decl. of Yvonne Nkrumah ("Nkrumah Decl.") ¶¶ 2, 4 [Dkt. #14-2].  She has lived in the United States since 2007 pursuant to a G-4 visa, which is reserved for officers and employees of international organizations.  Compl. ¶¶ 1–2.  She lives with her husband and their two adult children in Rockville, Maryland.  *Id.* ¶ 3; Nkrumah Decl. ¶ 3.

On June 29, 2020, the U.S. Department of State's Office of Foreign Missions ("OFM") sent a letter informing the World Bank that "under 22 U.S.C. § 288(d), Yvonne Nkrumah's presence in the United States has been determined not to be desirable."  Compl. ¶ 9; Pl.'s Mem. in Supp. of Mot. for TRO, Ex. A, Letter from Cliff Seagroves (June 29, 2020) ("June 29, 2020 Letter") [Dkt. #5-1].   The letter was signed by Cliff Seagroves, the Principal Deputy Director of the Office of Foreign Missions.  *See* June 29, 2020 Letter. This "undesirability" determination arose from a Diplomatic Security investigation into Ms. Nkrumah for submitting a fraudulent contract in support of a G-5 visa application for a domestic worker and participating in a scheme to underpay and overwork the G-5 visa holder.  *Id.*  The letter states that, "[i]f Ms. Nkrumah does not depart the United States by July 15, 2020, Ms. Nkrumah will no longer be entitled to the benefits accorded to employees of designated international organization under U.S. law, including the immigration benefit of 'G' nonimmigrant visa status."  *Id.*

2

On July 13, 2020, plaintiff filed a three-count Complaint alleging that OFM's undesirability determination (1) failed to follow applicable statutes and regulations, (2) failed to follow required *Foreign Affairs Manual* procedures, and (3) failed to comply with the Administrative Procedure Act. *See* Compl. ¶¶ 14–32. According to plaintiff, OFM never informed her that she was the subject of any investigation or shared any information about the investigation's findings. *Id.* ¶ 11. With her complaint, plaintiff moved for a temporary restraining order and preliminary injunction "to immediately bar the U.S. Department of State and its Office of Foreign Missions from revoking or unfavorably modifying her G-4 visa status until and unless [they] fully comply with statutes, regulations, and procedures governing the revocation or unfavorable modification of a G series visa holder." Pl.'s Mot. for a TRO & Prelim. Inj. at 1 [Dkt. #4]. I set a telephonic hearing for July 15, 2020. However, shortly before the hearing, the parties advised the Court that OFM had granted plaintiff an extension of her deadline to depart the United States to August 13, 2020. *See* Notice of Filing of July 14, 2020 Letter [Dkt. #9]. Accordingly, I denied plaintiff's request for a temporary restraining order in the hearing, but advised plaintiff, if necessary, to file another motion for a temporary restraining order or preliminary injunction in advance of the new deadline.

On September 8, 2020, in advance of the further extended September 25, 2020 deadline to depart the United States, plaintiff moved for a preliminary injunction barring the U.S. Department of State from revoking or unfavorably modifying her G-4 visa status until it complied with the relevant statutes and regulations. *See* Pl.'s Mot. for Prelim. Inj. [Dkt. #13]. After briefing concluded on September 18, 2020, I held a telephonic hearing

on September 23, 2020 and orally denied plaintiff's motion for a preliminary injunction, with this opinion to follow. *See* 9/23/2020 Min. Entry.

## LEGAL STANDARD

To obtain preliminary injunctive relief, a plaintiff "must establish [1] that [she] is likely to succeed on the merits, [2] that [she] is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in [her] favor, and [4] that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). A preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 22. Of course, the movant has the burden of persuasion. *See Cobell v. Norton*, 391 F.3d 251, 258 (D.C. Cir. 2004).

Although our Circuit Court has taken no position on the "sliding scale approach" after *Winter*, *see, e.g.*, *Archdiocese of Wash. v. Wash. Metro. Area Transit Auth.*, 897 F.3d 314, 334 (D.C. Cir. 2018), "the movant must, at a minimum, 'demonstrate that irreparable injury is *likely* in the absence of an injunction.'" *Bill Barrett Corp. v. U.S. Dep't of Interior*, 601 F. Supp. 2d 331, 334–35 (D.D.C. 2009) (quoting *Winter*, 555 U.S. at 22). The Supreme Court has established that the first two factors—likelihood of success on the merits and irreparable harm—"are the most critical." *Nken v. Holder*, 556 U.S. 418, 434 (2009).

## ANALYSIS

Plaintiff asserts that the Office of Foreign Missions failed to follow applicable procedures for revoking her visa, contending that a consular officer must give a visa holder notice and opportunity to respond before revoking his or her visa. Compl. ¶¶ 15–16; *see*

4

22 C.F.R. § 41.122(a), (c); 9 FAM 403.11-3.  Unfortunately for plaintiff, she has failed to demonstrate how this Court has jurisdiction to review the U.S. Department of State's undesirability determination.  Because plaintiff is unlikely to succeed on the merits of her claims and because the balance of equities and public interest weigh against preliminary injunctive relief, plaintiff's motion for a preliminary injunction must fail.

## I.      Likelihood of Success on the Merits

Plaintiff asserts that she is likely to succeed on the merits of her claims that she was afforded no process with respect to the undesirability determination.  Pl.'s Mem. in Supp. of Mot. for Prelim. Inj. ("Pl.'s P.I. Mem.") at 18 [Dkt. #14].  According to plaintiff, the U.S. Department of State has never notified her of its pending investigation, allowed her any opportunity to respond to the allegations, or shared the findings of its investigation with her.  Compl. ¶ 11.

However, upon consideration of the parties' briefing and argument, the relevant law, and the entire record, I am persuaded that the Court lacks jurisdiction to review plaintiff's undesirability determination.  To establish likelihood of success on the merits, a movant must show success "not only [on] substantive theories but also [on] establishment of jurisdiction." *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015). Plaintiff's "affirmative burden" to show a likelihood of success on the merits "necessarily includes a likelihood of the court's *reaching* the merits." *Nat'l Wildlife Fed'n v. Burford*, 835 F.2d 305, 328 (D.C. Cir. 1987) (Williams, J., concurring in part and dissenting in part). Because the decision to admit or exclude a foreign national is a particularly sensitive area of Executive discretion, it is "not within the province of any court, unless expressly

authorized by law, to review the determination of the political branch of the Government to exclude a given alien." *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1159 (D.C. Cir. 1999) (quoting *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 543 (1950)). As a general matter, determinations regarding the issuance or withholding of visas are "not subject to judicial review, at least unless Congress says otherwise." *Id.*

To date, plaintiff has failed to identify a statute authorizing judicial review of the Secretary of State's determination that the continued presence of a foreign visa holder working for an international organization is not desirable. Indeed, it is not clear what "meaningful standard" would exist "against which to judge [the Secretary of State's] exercise of discretion" in making this undesirability determination. *See Heckler v. Chaney*, 470 U.S. 821, 830 (1985). The Secretary's power to make determinations of undesirability touches at the heart of foreign policy, diplomatic relations, the war power, and other key Executive interests. *See Saavedra Bruno*, 197 F.3d at 1159. It is also worth noting that this undesirability determination is not, in and of itself, a visa revocation, contrary to what plaintiff contends, *see* Compl. ¶¶ 15–18. Defendants confirm that even though the Secretary determined in June 2020 that plaintiff's continued presence was undesirable, as of September 2020, plaintiff's G-4 visa was still valid and had not been revoked. *See* Defs.' Opp'n to Pl.'s Mot. for Prelim. Inj. ("Defs.' Opp'n"), Ex. 2, Decl. of Tiffany Derentz ¶ 7 (Sept. 11, 2020) [Dkt. #16-2].

However, even if plaintiff's visa had been revoked, Congress firmly committed this type of substantive decision to the Secretary's discretion. Under 8 U.S.C. § 1201, the Secretary of State "may at any time, in his discretion, revoke" a visa that has been issued,

and "[t]here shall be no means of judicial review . . . of a revocation." 8 U.S.C. § 1201(i).[1]

Plaintiff protests that this Court has jurisdiction to review the undesirability determination

pursuant to the Foreign Missions Act, 22 U.S.C. § 4301(a). Compl. ¶ 8; Pl.'s P.I. Mem. at

6. The Foreign Missions Act, however, provides for the operation of foreign missions and

international organizations, including the privileges and immunities of members. *See* 22

U.S.C. § 4301(b) (declaring it the policy of the United States "to facilitate the secure and

efficient operation in the United States of foreign missions and public international

organizations . . . and to assist in obtaining appropriate benefits, privileges, and immunities

for those missions and organizations"). *No* provision in the Foreign Missions Act could be

read to give the federal courts the power to review a determination to exclude an employee

of an international organization from the United States.

Plaintiff's claims also assume that the procedures for revocation of a visa by a

consular officer apply to her situation. Compl. ¶¶ 15–18. *See* 22 C.F.R. § 41.122(c)

(providing notice requirements for revocation of visas). Unfortunately for plaintiff, they

do not. As noted, plaintiff's visa had not yet been revoked as of September 2020. *See*

*supra* p. 6. The U.S. Department of State determined that plaintiff's continued presence in

the United States was "not desirable" pursuant to the International Organizations

Immunities Act ("IOIA"), 22 U.S.C. § 288e. Under the IOIA, if the Secretary of State or

his designee determines that the "continued presence" of an employee of an international

---

[1] For this same reason, plaintiff has no justiciable claim under the APA, which bars review when "statutes preclude judicial review" or "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(1)–(2).

7

organization is "not desirable," the Secretary of State need only inform the international organization of this determination. 22 U.S.C. § 288e. After the employee has been given "a reasonable length of time," he or she must depart the United States, and he or she ceases to be entitled to the IOIA's benefits, including a G-series visa. *See id.*

Plaintiff questions whether the undesirability determination at issue here was made by the Secretary of State or his designee under 22 U.S.C. § 288e, rather than by a consular officer. Pl.'s Reply at 5–7 [Dkt. #17]. Plaintiff notes that the June 29, 2020 letter was signed not by Secretary of State Michael R. Pompeo, but by Cliff Seagroves, the Principal Deputy Director of the U.S. Department of State's Office of Foreign Missions. *See* June 29, 2020 Letter at 1. Plaintiff thus demands that the U.S. Department of State and the Office of Foreign Missions "trace their claimed delegation of authority." Pl.'s Reply at 6. Unfortunately for plaintiff, defendants have sufficiently done so. Defendants make clear that Cliff Seagroves, as OFM Principal Deputy Director, was acting as the Secretary's designee in issuing the undesirability determination. Unless explicitly prohibited by law, the Secretary of State may delegate authority to perform any of the Secretary's functions to "officers and employees under the direction and supervision of the Secretary." 22 U.S.C. § 2651a(a)(4). The Secretary of State delegated authority to perform functions under the IOIA to the Deputy Secretary for Management and Resources,[2] who delegated it to the Under Secretary for Management,[3] who delegated it to the Director and Deputy Director

---

[2] *See* Delegation of Authority 245-1, Delegation From the Secretary to the Deputy Secretary and the Deputy Secretary for Management and Resources of Authorities of the Secretary of State, 74 Fed. Reg. 8835 (Feb. 26, 2009).
[3] *See* Delegation of Authority 390, Delegation of Certain Authorities and Functions Under the International Organizations Immunities Act, 80 Fed. Reg. 75700-02 (Dec. 3, 2015).

of the Office of Foreign Missions.[4]  Plaintiff's request for limited discovery is unnecessary when this chain of delegations is available in the *Federal Register*.  Moreover, contrary to plaintiff's insistence, Pl.'s P.I. Mem. at 17, Judge Oberdorfer's decision in *Mansur v. Albright*, 130 F. Supp. 2d 59 (D.D.C. 2001), does not help her case: he squarely concluded that the Deputy Assistant Secretary revoked plaintiff's visa in her capacity as the Secretary of State's designee, *id.* at 61, similar to what was done here.

Because plaintiff has failed to meet her burden of showing that the Court possesses jurisdiction to review the OFM Principal Deputy Director's undesirability determination, plaintiff is not likely to succeed on the merits of her claims, and preliminary injunctive relief is thus not appropriate.

## II.    Irreparable Harm

A party moving for preliminary injunctive relief must establish that she is "likely to suffer irreparable harm in the absence of preliminary relief." *Abdullah v. Obama*, 753 F.3d 193, 197 (D.C. Cir. 2014).  When plaintiff first moved for preliminary injunctive relief, she alleged that she would be unable to return to her home country because Ghana's borders were closed to U.S. travelers due to the COVID-19 pandemic. *See* Compl. ¶ 13; Pl.'s Mem. in Supp. of Mot. for TRO at 1–2 [Dkt. #5].  However, Ghana has since reopened its borders to citizens.[5]  Plaintiff now alleges that if she departs the United States for Ghana, she "would be separated from her husband . . . and from her two adult children, with no path

---

[4] *See* Delegation of Authority 390-1, Re-Delegation of Certain Authorities and Functions Under the International Organizations Immunities Act, 80 Fed. Reg. 75700-01 (Dec. 3, 2015).
[5] *See* U.S. Embassy in Ghana, Travel Alert (Aug. 31, 2020), https://gh.usembassy.gov/travel-alert-u-s-embassy-accra-ghana-08312020/.

to returning to the United States." Pl.'s P.I. Mem. at 18.  As defendants note, Defs.' Opp'n at 16, removal from the United States, by itself, is not categorically irreparable.  *See Nken*, 556 U.S. at 435.  Plaintiff alleges no potential harm or persecution she would face should she be required to return to Ghana.  *See* Nkrumah Decl. ¶¶ 32–34; Pl.'s Reply at 7.  Nor does plaintiff show how her ability to defend herself against OFM's allegations would be compromised if she returned to Ghana.  *Id.*

To be sure, plaintiff's situation affects not only her, but also her family: her return to Ghana would split up her family and could potentially cause her husband to lose his visa as well.  *See* Nkrumah Decl. ¶ 32.  It is also possible, though by no means likely, that plaintiff's inability to work in the United States could impact her employment with the World Bank. *See id.* ¶ 33.  As I noted in the September 23, 2020 hearing, the question of irreparable harm here is closer than the questions of likelihood of success on the merits, balance of the equities, and public interest.  However, as explained below, these three factors outweigh any showing of irreparable harm that plaintiff has made.

### III.   Balance of the Equities and Public Interest

The balance of equities and public interest factors, which merge when plaintiff attempts to preliminarily enjoin a government action, *Nken*, 556 U.S. at 435, weigh against preliminary injunctive relief.  The Executive Branch has a strong interest in conducting foreign relations and managing the admission of foreign nationals in the United States without judicial second-guessing.  *See Florida EB5 Invs., LLC v. Wolf*, 443 F. Supp. 3d 7, 14 (D.D.C. 2020).  To be sure, it is not in the public interest to deny individuals process to which they are entitled.  But Congress's decision not to provide judicial review of the type

of undesirability determination at issue here, *see* 22 U.S.C. § 288e, reflects its conclusion that opening the courthouse doors to such challenges would *not* be in the public interest. The Court must "pay particular regard for the public consequences" of granting preliminary injunctive relief. *Winter*, 555 U.S. at 24.   Under these circumstances, preliminary injunctive relief would thwart the Secretary of State's ability to promptly and efficiently exclude individuals from the United States whom he determines to be undesirable, whether because they are suspected of criminal activity or wrongdoing, because they could damage the United States' diplomatic relationships, or for whatever other reason in his discretion.

As such, I find that the harm to the Secretary of State's ability to conduct foreign relations and to manage the admission of foreign nationals that would result if I granted preliminary injunctive relief outweighs the potential harm to plaintiff and her family in the absence of injunctive relief.   Accordingly, the balance of equities and the public interest also weigh against granting plaintiff preliminary injunctive relief.

## CONCLUSION

For the above reasons, the Court DENIES plaintiff's motion for a preliminary injunction.   An appropriate Order will issue with this Memorandum Opinion.


RICHARD J. LEON
United States District Judge

11